IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL STRATTON,                     )<br>                                                     )<br>            Plaintiff,                    )<br>                                                     )<br>      v.                                         )       C.A. No. 22-466-RGA<br>                                                     )<br>iM3NY LLC, IMPERIUM3 NEW YORK, )<br>INC., CHAITANYA SHARMA, SHAILESH )<br>UPRETI, and FRANK POULLAS,    )<br>                                                     )<br>            Defendants.               )<br>                                                     ) | |

## REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion to Dismiss Amended Complaint (D.I. 27). The Court held a hearing on the motion on June 14, 2023 and read its decision from the bench on June 16, 2023. For the reasons announced at the June 16 hearing, I recommend that the motion be GRANTED.

### I.    DISCUSSION

The Court's ruling was announced from the bench on June 16, 2023, as follows:

> I'm ready to give my Report and Recommendation on Defendants' Motion to Dismiss the Amended Complaint (D.I. 27). I recommend that the motion be granted.
>
> I will summarize the reasons for that recommendation in a moment. But before I do, I want to be clear that my failure to address a particular argument or case cited by a party does not mean that I did not consider it. We have carefully considered everything.
>
> Because I'm speaking primarily for the parties and the District Judge, I will recite only those facts necessary to resolve the particular motion in front of me. Before I summarize the facts, I note the following. The First Amended Complaint, which I will refer to as the "FAC," frequently refers to "Defendants" without specifying a particular Defendant, which makes it challenging to

discern which Defendant is alleged to have performed the alleged acts. This sort of group pleading is particularly problematic where, as here, some of the Defendants contest that they are subject to personal jurisdiction in Delaware, and one of the entity Defendants was not even in existence at the time of some of the alleged conduct.

With that in mind, the FAC alleges as follows. In 2020, Plaintiff was recruited by Defendants Chaitanya Sharma and Shailesh Upreti to work for a start-up lithium-ion battery business in New York.[1] According to Plaintiff, Defendants Sharma and Upreti told him that the business wasn't yet funded, but that they anticipated funding, and that Plaintiff would be paid for all the work he did pre-funding.[2]

On May 5, 2020, Defendant Sharma presented Plaintiff with a Memorandum of Understanding, or "MOU," for signature.[3] The MOU states that it "documents the understanding reached between [Plaintiff] . . . and [Defendant] Imperium3 New York, Inc."[4] It references the company's "intent to offer [Plaintiff], in the future, the position of Senior Vice President, Sales & Marketing contingent upon the Company's success in raising the current $75 Million funding round . . . ."[5] It says that the position will be a salaried position with monetary compensation of $150,000 per year plus bonuses and that Plaintiff "will also be granted a Stock Options package for $480,000 with a strike price to be determined at the time [Plaintiff's] Employment Agreement will be issued."[6] It also sets forth a vesting schedule tied to the number of months of Plaintiff's employment with the company.[7] Plaintiff signed the MOU.[8]

---

[1] (D.I. 24 ¶ 41.)

[2] (*Id.* ¶¶ 42–43.)

[3] (*Id.* ¶ 45.)

[4] (D.I. 31, Ex. A.)

[5] (*Id.*)

[6] (*Id.*)

[7] (*Id.*)

[8] (*Id.*; D.I. 24 ¶¶ 45–46.)

Subsequently, Plaintiff was publicly held out as a Senior Vice President of Sales and Marketing for the start-up company.[9] Plaintiff alleges that he regularly worked more than 40 hours per week but that he was not paid for any work until March 2021, when Defendant Imperium3 New York, Inc. started paying him a salary consistent with the salary set forth in the MOU.[10] At about that same time, Defendant Imperium3 New York, Inc. also retroactively paid him a salary corresponding to the period between January 4, 2021 to March 2021.[11] Plaintiff says he's never been paid for his labor performed between March 2020 to January 2021.[12]

On April 19, 2021, Plaintiff was presented with an employment letter agreement.[13] The agreement purported to "confirm . . . the terms" of Plaintiff's continued employment with Defendant Imperium3 New York, Inc. in the position of Senior Vice President, Sales & Marketing.[14] Among other things, the agreement establishes Plaintiff's salary of $150,000 per year and his eligibility for bonuses.[15] The contract states that Plaintiff "will be an 'exempt' employee not entitled to overtime pay," and it states that the agreement will be interpreted in accordance with the laws of the State of New York.[16]

The next month, in May 2021, Plaintiff relocated his family from Connecticut to Endicott, New York.[17] Around that same time, in May 2021, Plaintiff was presented with an "Incentive Unit Award

---

[9] (D.I. 24 ¶ 47.)

[10] (*Id.* ¶¶ 48, 51, 61.)

[11] (*Id.* ¶ 62.)

[12] (*Id.* ¶ 63.)

[13] (*Id.*, Ex. C.)

[14] (*Id.*)

[15] (*Id.*, Ex. C ¶ 2.)

[16] (*Id.*, Ex. C ¶¶ 2, 10.)

[17] (*Id.* ¶ 57.)

3

Agreement."[18] The incentive agreement states that it is entered into by and between Defendant "iM3NY LLC, a Delaware limited liability company" and Plaintiff.[19] A "whereas" clause refers to the fact that Plaintiff "is an employee of [Defendant] Imperium3 New York, Inc., a New York corporation, a subsidiary of [iM3NY LLC], pursuant to the terms of an employment agreement, dated April 19, 2021 between [Plaintiff] and [Defendant Imperium3 New York, Inc.]."[20] Pursuant to the incentive agreement, Plaintiff was entitled to incentive units or equity units in iM3NY LLC, in accordance with a vesting schedule based on the number of months since May 5, 2020 (the date Plaintiff was presented the MOU with Imperium3 New York, Inc.), subject to repurchase and forfeiture restrictions, and other restrictions.[21] As part of the incentive agreement, Plaintiff agreed to be bound to the terms of iM3NY's LLC agreement as a member.[22] Section 2(a) of the incentive agreement states that no provision of the incentive agreement shall entitle Plaintiff to remain an employee of Imperium3 New York, Inc. for any particular period of time.[23] Plaintiff signed the incentive agreement.[24]

At some point during his employment, Plaintiff became concerned about certain public statements made by Defendant Frank Poullas and his representatives.[25] Defendant Poullas is a member of the boards of directors of iM3NY LLC and Imperium3 New York, Inc. and is an indirect investor in iM3NY LLC.[26] Plaintiff told Defendant Sharma that the statements must be corrected.[27]

---

[18] (*Id.*, Ex. A.)

[19] (*Id.*)

[20] (*Id.*)

[21] (*Id.*, Ex. A § 4(a).)

[22] (*Id.*, Ex. A § 2(c).)

[23] (*Id.*, Ex. A § 2(a).)

[24] (*Id.* ¶ 56; *see also id.* Ex. A.)

[25] (*Id.* ¶¶ 65–70.)

[26] (D.I. 35 ¶ 2.)

[27] (D.I. 24 ¶ 70.)

4

In November 2021, Defendant Sharma presented Plaintiff with a letter stating that Imperium3 New York, Inc. was "amending [Plaintiff's] offer to the position of Senior VP of Marketing and Community Outreach reporting to the CEO effective Jan 1, 2022."[28] The letter stated that Plaintiff's salary would be changed to $120,000.[29] It further stated that "[p]er the vesting terms of the Incentive Unit Award Agreement, the number of incentive units fully vested as of Dec 31, 2021, will be 8,801 at $21.05 per Incentive Unit. The remaining unvested units, 13,432, will be forfeited and returned to the employee pool."[30]

Subsequently, on December 17, 2021, Plaintiff was told by Defendant Sharma that "we have decided to eliminate your position."[31] On December 24, 2021, Plaintiff received in the mail a document titled, "Separation, Termination, Release of Claims and Confidentiality Agreement."[32] The proposed agreement states that it is "entered into by and between Imperium3 New York, Inc. . . . and [Plaintiff]."[33] It further states that Plaintiff is terminated for cause as of December 31, 2021, pursuant to the April 19, 2021 employment agreement.[34] In an Exhibit A, it states that "[a]ll outstanding Unvested or Vested Awarded Units are forfeited and cancelled due to your termination for cause. You have zero (0) Vested Units."[35]

Plaintiff filed this action on April 10, 2022. He filed the FAC on August 5, 2022.[36] The FAC has Thirteen Counts that can be grouped into categories: (1) claims under the federal Fair Labor

---

[28] (*Id.* ¶ 73; D.I. 31, Ex. E.)

[29] (D.I. 31, Ex. E.)

[30] (*Id.*)

[31] (D.I. 24 ¶ 76.)

[32] (*Id.* ¶ 77; D.I. 31, Ex. F.)

[33] (D.I. 31, Ex. F.)

[34] (*Id.*; D.I. 24 ¶ 77.)

[35] (D.I. 31, Ex. F at Ex. A.)

[36] (D.I. 24.)

5

Standards Act ("FLSA") for failure to pay Plaintiff wages and overtime for the time period prior to January 4, 2021; (2) claims under the New York Labor Laws for failure to pay Plaintiff for the same time period and for state law whistleblower violations; (3) equitable and quasi-contract claims relating to the fact that Plaintiff wasn't paid for work prior to January 4, 2021; (4) contract-related claims arising from the May 2021 Incentive Unit Award Agreement; and (5) contract-related claims arising from the April 2021 employment letter agreement.

The FAC names the following as Defendants: iM3NY LLC, Imperium3 New York Inc., Chaitanya Sharma, Shailesh Upreti, and Frank Poullas.

Defendants say that all of the claims and all of the Defendants should be dismissed for lack of personal jurisdiction and failure to state a claim. I held a hearing on Defendants' motion to dismiss on June 14, 2023.

I'm not going to read into the record the legal standards governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) or the rules governing the assertion of personal jurisdiction. I set forth those standards in a report and recommendation in *Truinject Corp. v. Nestle Skin Health, S.A.*, [No. 19-592-LPS-JLH, 2019 WL 6828984, *7–8 (D. Del. Dec. 13, 2019)], and I incorporate that articulation here by reference.[37]

---

[37] To exercise personal jurisdiction over a defendant, a court generally must answer two questions: one statutory and one constitutional. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d Cir. 1998); *Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*, 78 F. Supp. 3d 572, 580 (D. Del. 2015), *aff'd*, 817 F.3d 755 (Fed. Cir. 2016). The statutory inquiry requires the court to determine whether jurisdiction over the defendant is appropriate under the long-arm statute of the state in which the court is located. *IMO Indus.*, 155 F.3d at 259.

The constitutional inquiry asks whether exercising jurisdiction over the defendant comports with the Due Process Clause of the U.S. Constitution. *Id.* Due Process is satisfied where the court finds the existence of "certain minimum contacts" between the defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's "contacts" with the forum state can give rise to "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017); *see also Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). A court has general jurisdiction over a corporate defendant when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear*

> I'm also not going to read into the record the legal standards governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). I set forth those standards in a report and recommendation in *Truinject Corp. v. Nestle Skin Health, S.A.*, [No. 19-592-LPS-JLH, 2020 WL 70981, *7 (D. Del. Jan. 7, 2020)], and I incorporate that formulation by reference.[38]

---

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). If the court has general jurisdiction over a corporate defendant, it may hear any claim against it, even if the claim arose outside the state. *Goodyear*, 564 U.S. at 919; *Provident Nat. Bank*, 819 F.2d at 437. A court has specific jurisdiction over a defendant in a particular suit "when the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum." *Goodyear*, 564 U.S. at 923–24 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8, (1984)); *see also Remick*, 238 F.3d at 255.

But the requirement that a court have personal jurisdiction is a "waivable right," and a defendant may consent to the jurisdiction of the court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."). A defendant is deemed to have consented to personal jurisdiction in a particular jurisdiction when the parties have stipulated in advance that their controversies should be resolved in that jurisdiction, such as in a forum selection clause of a contract. *See Burger King*, 471 U.S. at 472 n.14 (1985); *see also Hardwire, LLC v. Zero Int'l, Inc.*, No. CV 14-54-LPS-CJB, 2014 WL 5144610, *6 (D. Del. Oct. 14, 2014); *Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-971-LPS, 2011 WL 6004079, at *4 (D. Del. Nov. 4, 2011) (quoting *Hadley v. Shaffer*, No. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003)); *Neurvana Med., LLC v. Balt USA, LLC*, No. 2019-0034-KSJM, 2019 WL 4464268, at *3 (Del. Ch. Sept. 18, 2019), *reargument denied*, No. 2019-0034-KSJM, 2019 WL 5092894 (Del. Ch. Oct. 10, 2019). If a defendant has agreed to a forum selection clause, there is no requirement for the court to undertake a separate due process "minimum contacts" analysis. *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452, 456 (D. Del. 2008); *see also Burger King*, 471 U.S. at 472 n.14 (enforcement of "freely negotiated" forum selection clauses does not offend due process).

[38] A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint, I must assume all "well-pleaded facts" are true but need not assume the truth of legal conclusions. *Id.* at 679. "[W]hen the allegations in a

In this case we have several counts and several defendants in each count. Plaintiff argues that some of the defendants are subject to personal jurisdiction on the basis of the implied consent statute or express consent through a Delaware forum selection clause. But a consent to jurisdiction in a particular forum only confers jurisdiction with respect to the scope of the consent.[39]

So although Plaintiff's briefing, like the FAC, tends to lump Defendants and claims together with respect to the personal jurisdiction arguments, the appropriate way to do this, in my view, is to go claim by claim and defendant by defendant and assess, as appropriate, whether the court has personal jurisdiction over that defendant with respect to that claim, and whether that claim states a claim as to that defendant.

I'll start with the federal FLSA claims. Again, the FLSA claims all pertain to Plaintiff's claim that he was not appropriately paid wages for work he did prior to January 2021.

Starting with iM3NY LLC, the parties agree that it is a Delaware entity and is thus subject to general personal jurisdiction here. There is no dispute, however, that iM3NY LLC did not come into existence as an entity until April 2021, which is well after the events underlying Plaintiff's FLSA claims. Although Plaintiff proffers several theories about how iM3NY LLC could be liable under the FLSA, including that iM3NY LLC and Imperium3 New York, Inc. operated as a single integrated enterprise or as joint employers of Plaintiff, or that the corporate entities were alter egos of each other, there is no plausible allegation that iM3NY LLC was Plaintiff's employer at the relevant time period for Plaintiff's FLSA claims, which is prior to January 2021 and therefore prior to iM3NY LLC's existence.

Plaintiff points out that Rule 17(b)(3)(A) of the Federal Rules of Civil Procedure allows an "unincorporated association" lacking the capacity to be sued under state law to be sued in its

---

complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (quotation omitted).

[39] *Whirlpool Corp. v. Cabri*, No. 21-00979-EJW, 2022 WL 1421126, at *13 (D. Del. May 5, 2022).

common name to enforce a federal substantive right.[40] That misses the point, however, as the question is whether Plaintiff has pleaded that iM3NY LLC is plausibly liable under the FLSA for events that occurred prior to 2021, not whether it has capacity to be sued in court.

Plaintiff also points out that the definition of "employer" under the FLSA includes "any organized group of persons."[41] But that doesn't change the fact that the iM3NY LLC entity was not organized and did not exist until 2021.

Plaintiff has also pointed to a case discussing successor liability in FLSA cases.[42] The idea behind the federal common law doctrine of successor liability is to prevent an employer that is an FLSA violator from selling its business and effectively extinguishing the ability of its workers to recover for the FLSA violations.[43] What the successor liability doctrine does is that it puts the buyer of the business on the hook for the seller's violations that occurred before the sale.[44]

That doctrine doesn't apply here as there is no plausible allegation that iM3NY LLC is the successor of Imperium3 New York Inc. The implausibility of Plaintiff's suggestion that iM3NY LLC was Imperium3 New York Inc.'s successor is underscored by Plaintiff's own allegation that he continued to be employed by Imperium3 New York Inc. even after iM3NY LLC's creation in 2021 and all the way up until his termination many months later.

Plaintiff also cites a case discussing the subsequent ratification of a contract by a corporation that wasn't in existence at the time the contract is made.[45] But Plaintiff's federal claims are FLSA claims for minimum wage and overtime, not contract claims,

---

[40] Fed. R. Civ. P. 17(b)(3)(A).

[41] 29 U.S.C. § 203(d).

[42] *See Thompson v. Real Est. Mortg. Network*, 748 F.3d 142 (3d Cir. 2014).

[43] *Id.* at 150–52.

[44] *Id.*

[45] *See Grunstein v. Silva*, C.A. No. 3932–VCN, 2009 WL 4698541, at *18 (Del. Ch. Dec. 8, 2009) (mentioning "the general rule that business entities are not liable for the contracts of their promoters prior to incorporation").

9

and, what's more, Plaintiff has not plausibly alleged that iM3NY LLC, after its creation, ratified any promise to pay Plaintiff wages for work Plaintiff performed prior to January 4, 2021.

In sum, even if the FAC did state a FLSA claim against Imperium3 New York Inc. for underpaying Plaintiff in 2020, the FAC does not plausibly allege that its parent company, iM3NY LLC, which was formed in 2021, was Plaintiff's employer in 2020 or that iM3NY LLC assumed its subsidiary's obligations.

Accordingly, I agree with Defendants that the FLSA claims against iM3NY LLC should be dismissed under Rule 12(b)(6).

As for Plaintiff's FLSA claims against the individual Defendants, I agree with Defendants that the court lacks personal jurisdiction over them. The parties agree that none of the individual Defendants are residents of Delaware. However, Plaintiff advances several theories under which the Court might exercise personal jurisdiction over them.

Plaintiff first argues that they are subject to personal jurisdiction because they accepted service of the summons and complaint. Plaintiff points out that Upreti in particular was served process through iM3NY LLC's authorized agent in Delaware. But Plaintiff has not suggested that any of the individual Defendants were served while they were physically present in Delaware. And service of process on a non-resident individual that is not physically present in Delaware does not by itself confer personal jurisdiction in Delaware over that individual.

Plaintiff next argues that the individual Defendants have consented to personal jurisdiction in Delaware by operation of the Delaware forum selection clause in the Incentive Unit Award Agreement. I disagree. The signatories to the incentive agreement are Plaintiff and iM3NY LLC. But even if the individual Defendants were bound by the forum selection clause, and I don't think they are, the forum selection clause would not cover the FLSA claims.

"In Delaware, a consent to jurisdiction clause operates only as a consent to jurisdiction with respect to the claims to which it applies."[46] The incentive agreement states that it should be construed in accordance with Delaware law, and the forum selection clause says that claims "arising out of or relating to this Agreement"

---

[46] *Whirlpool Corp.*, 2022 WL 1421126, at *13 (cleaned up).

should be heard in Delaware.[47] Plaintiff accurately points out that Delaware courts construe the phrase "arising out of or relating to" broadly. But even a broad reading could not encompass Plaintiff's FLSA claims. The incentive agreement was executed in May 2021 and it specifies the terms on which Plaintiff would be entitled to incentive and equity units in iM3NY LLC. Plaintiff's FLSA claims, in contrast, pertain to his entitlement to minimum wages and overtime for work that he performed before the incentive agreement was ever entered into. Indeed, the incentive agreement itself refers to the fact that Plaintiff had entered into a separate April 2021 employment agreement with Imperium3 New York Inc. without any indication that the forum selection clause should govern that employment agreement (which, incidentally, specified New York law), much less all claims arising from Plaintiff's previous or future employment. In sum, I reject Plaintiff's argument that his FLSA claims fall under the forum selection clause in the 2021 incentive agreement.

Plaintiff next argues that the individual Defendants are subject to personal jurisdiction by operation of Delaware's manager consent statute, 6 Del. Code § 18-109. That statute provides in relevant part that certain managers of LLCs served in the manner prescribed by the statute consent to jurisdiction in Delaware for all civil actions brought here "involving or relating to the business of the [LLC] or a violation by the manager . . . of a duty to the [LLC] or any member."[48]

The law in Delaware regarding the scope of the manager consent statute appears to be evolving.[49] But I don't need to wade into that discussion here because Plaintiff's FLSA claims do not involve or relate to the business of iM3NY LLC for the reasons already explained. The FLSA claims relate to conduct that occurred before iM3NY LLC was even formed.

Plaintiff also suggests that the individual Defendants are subject to personal jurisdiction under the Delaware long-arm statute, 10 Del. C. § 3104. I disagree. Plaintiff has proffered no reason to believe, much less evidentiary support, that Plaintiff's FLSA claim for unpaid wages from 2020 arises out of any of the individual

---

[47] (D.I. 24, Ex. A § 9(c), (j).)

[48] 6 Del. Code § 18-109(a).

[49] *See Next Level Ventures, LLC v. AVID USA Techs. LLC*, No. 2022-0699-MTZ, 2023 WL 3141054 (Del. Ch. Mar. 16, 2023).

Defendants' contacts with Delaware, nor has Plaintiff explained how the individual Defendants' conduct meets any of the subsections of the long-arm statute.[50] Plaintiff points out that the individual Defendants were involved in forming the LLC in Delaware in 2021, but that happened well after Plaintiff's FLSA claims accrued. And there is no real argument that the LLC formation in 2021 was part of a grand scheme or plan to deny Plaintiff wages and overtime in 2020.

Although Plaintiff's counsel confirmed at oral argument that Plaintiff does not claim to have ever traveled to Delaware, Plaintiff posits that the individual Defendants might have assigned him to cover a sales area that included Delaware and that Plaintiff might have made sales calls to a Delaware-based company during the time period Plaintiff wasn't being paid minimum wages and overtime in violation of the FLSA. Even if that were true, however, I would conclude that such *de minimis* contacts by Plaintiff with Delaware would be insufficient to establish minimum contacts in Delaware on the part of the individual Defendants that would satisfy due process with respect to the FLSA claims.

For that reason, even though Plaintiff requests jurisdictional discovery for the purpose of determining whether his superiors assigned him to cover a region that included Delaware and whether he made sales contacts to a Delaware-based company, I would deny the request for jurisdictional discovery as futile.

As for Plaintiff's FLSA claims against Imperium3 New York Inc., I also agree with Defendants that the Court lacks personal jurisdiction over it. Imperium3 New York Inc. is a New York corporation. Plaintiff argues that Imperium3 New York Inc. is subject to personal jurisdiction by operation of the forum selection clause in the incentive agreement. Imperium3 New York Inc. is not a signatory to that agreement. However, even if Imperium3 New York Inc. were bound by that agreement, the forum selection clause does not cover Plaintiff's FLSA claims for the reasons already explained.

Defendant next contends that Imperium3 New York Inc. is subject to personal jurisdiction under the Delaware long-arm statute, 10 Del. Code § 3104. I disagree. Plaintiff has proffered no reason to believe, much less evidentiary support, that Plaintiff's FLSA claim for unpaid wages from 2020 arises out of Imperium3 New York Inc.'s contacts with Delaware, nor has Plaintiff explained how

---

[50] *See* 10 Del. Code § 3104(c)(1–6).

Imperium3 New York Inc.'s conduct meets any of the subsections of the long-arm statute.[51] Plaintiff points out that Imperium3 New York Inc. was involved in creating the LLC in Delaware in 2021, and Plaintiff cites cases standing for the proposition that the Delaware long-arm statute is satisfied where the underlying cause of action arises from the creation and operation of a Delaware subsidiary.[52]

But again, the iM3NY LLC was created well after Plaintiff's FLSA claims accrued. Plaintiff's FLSA claims did not arise from the formation of the LLC, and there is no legitimate contention that the LLC formation in 2021 was part of an overall scheme to deny Plaintiff wages and overtime in 2020.

I would deny Plaintiff's request for jurisdictional discovery with respect to Imperium3 New York Inc. Again, Plaintiff does not claim that he ever traveled to Delaware as part of his business duties. Even if discovery did show that he was assigned to cover a region that included Delaware and that he made sales contacts to a Delaware-based company, I would conclude that such *de minimis* contacts by Plaintiff with Delaware would be insufficient to establish minimum contacts [on the part of Imperium3 New York Inc.]. In short, there is no reason that Imperium3 New York Inc., a New York corporation with a principal place of business in New York, would expect to be haled before a Delaware court to defend against Plaintiff's FLSA claims arising from events that occurred in 2020 when Plaintiff lived in Connecticut.

In sum, with respect to Plaintiff's FLSA claims, Plaintiff has not stated a plausible claim for relief as to iM3NY LLC, and the Court does not have personal jurisdiction over the remaining defendants with respect to those claims. All of the FLSA claims should therefore be dismissed.

Once the FLSA claims are gone, only state law claims remain, which raises the question of whether this case should be in this Court at all. At oral argument, Plaintiff argued that the Court has original jurisdiction over the state law claims on the basis of diversity. I disagree.

---

[51] *See id.*

[52] *See Papendick v. Bosch*, 410 A.2d 148, 152 (Del. 1979); *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 439–40 (Del. 2005).

Diversity jurisdiction requires complete diversity of citizenship. "Citizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation.'"[53] In determining whether diversity jurisdiction exists, the Court needs to look at the citizenship of the parties at the time the case was filed.[54]

When the case was filed, at least two of the Defendants, Imperium3 New York Inc. and [Upreti], were citizens of New York.[55] Plaintiff's pleadings allege that he was also a citizen of New York.[56] When I asked counsel at the hearing about Plaintiff's citizenship, counsel argued that Plaintiff should be deemed to have been a citizen of Connecticut because—even though he owned a home and was living in New York when he brought this case—he intended to and had taken steps to move to Connecticut. Plaintiff argues that on those facts he wasn't domiciled in New York when the case was filed. I disagree. An individual can change domicile. But to do so, two things are required: "[h]e must take up residence at the new domicile, and he must intend to remain there."[57] Since Plaintiff had not yet taken up residence in Connecticut at the time the case was filed, he was still domiciled in New York. Without complete diversity of citizenship, the Court lacks [original] jurisdiction over the remaining state law claims.

The only remaining potential basis for exercising jurisdiction over the state law claims is the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). At the hearing, both sides agreed that, if the Court dismissed the FLSA claims, the Court had discretion to dismiss the remaining state law claims if there was no diversity

---

[53] *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)).

[54] *Smith v. Allied Retail Properties*, No. 17-1606-RGA, 2019 WL 3731673, at *2 (D. Del. Aug. 8, 2019), *aff'd*, 802 F. App'x 734 (3d Cir. 2020); *see also Coulter v. Coulter*, No. 22-2228, 2023 WL 1879239, at *1 (3d Cir. Feb. 10, 2023) ("Diversity is determined as of the time the complaint is filed . . . .").

[55] (D.I. 24 ¶¶ 13, 15.)

[56] (*Id.* ¶ 9.)

[57] *McCann*, 458 F.3d at 286 (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972)); *see also Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) ("[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely.").

jurisdiction when the case was filed. That is consistent with § 1367(c)(3), which says that the Court "may decline to exercise supplemental jurisdiction" over state law claims if it "has dismissed all claims over which it has original jurisdiction[.]"[58]

The Third Circuit says that the Court "'must decline' to exercise supplemental jurisdiction in such circumstances 'unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'"[59] Considerations of judicial economy, convenience, and fairness to the parties do not support retaining jurisdiction over the state law claims, and there is no other good reason this case should remain in this Court. Accordingly, I recommend declining to exercise supplemental jurisdiction over the remaining state law claims.

The FAC should be dismissed in its entirety. That concludes my Report and Recommendation.

## II.  CONCLUSION

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.

---

[58] 28 U.S.C. § 1367(c)(3).

[59] *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original)); *see also Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 135 (3d Cir. 2019) ("[A] court does not err if it declines to exercise supplemental jurisdiction over state claims after it dismisses a federal claim on which its jurisdiction is based in the absence of extraordinary circumstances.").

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: July 11, 2023

_____
The Honorable Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE